UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

EASTERN SAVINGS BANK, FSB,

                Plaintiff,

   -against-

RICHARD ROBINSON a/k/a RICHARD A.
ROBINSON, GAIL ROBINSON,
AMERICREDIT FINANCIAL SERVICES,
INC., L.I. ANESTHESIOLOGIST PLLC,
and QUINN ROBINSON,

                Defendants.

-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
13-CV-7308 (ADS)(SIL)

**LOCKE, Magistrate Judge:**

Presently before the Court, on referral from the Honorable Arthur D. Spatt for

Report and Recommendation, is Plaintiff Eastern Savings Bank, FSB's ("Plaintiff" or

"Eastern") motion for a default judgment against Defendants Americredit Financial

Services, Inc. ("Americredit"), L.I. Anesthesiologist PLLC ("L.I. Anesthesiologist"),

and Quinn Robinson (collectively, the "Defaulting Defendants"). *See* Docket Entry

("DE") [60]. By way of Complaint dated December 23, 2013, Plaintiff commenced this

foreclosure action, seeking, among other things, to foreclose upon the mortgage lien

encumbering the property located at 734 Carlton Road, West Babylon, New York

11704 (the "Subject Property"). *See* DE [1]. After the Defaulting Defendants failed

to answer or otherwise respond, the Clerk of Court noted their default on July 1, 2015.

*See* DE [43]. In a February 4, 2016 Memorandum of Decision and Order, Judge Spatt

granted Plaintiff's motion for summary judgment against Defendants Richard

Robinson and Gail Robinson (collectively, the "Robinsons" or "Homeowner

1

Defendants"), and held that Plaintiff was entitled to a judgment of foreclosure and sale. *See E. Sav. Bank, FSB v. Robinson*, No. 13-CV-7308, 2016 WL 482024, at *4 (E.D.N.Y. Feb. 4, 2016). On February 12, 2016, Plaintiff filed the instant motion for a default judgment against the Defaulting Defendants, which the Robinsons oppose in part. *See* DEs [60], [65]. On February 16, 2016, Judge Spatt referred Plaintiff's motion to this Court for a Report and Recommendation as to whether it should be granted and, if so, the proper relief to be granted, including whether the proposed judgment of foreclosure and sale properly resolves this action. *See* DE [62]. For the reasons set forth herein, the Court respectfully recommends that Plaintiff's motion be granted, and that Plaintiff be awarded damages as described below.

## I.    BACKGROUND

### A. <u>Relevant Facts</u>

On or about January 9, 2008, the Homeowner Defendants executed and delivered a note to Eastern in the principal amount of $225,000.00, with interest to accrue at a rate of 12.99% per year (the "Note"). *See* Affidavit of Terry Brown in Support of Statement of Damages (the "Brown Aff."), DE [60-2], ¶ 3; Am. Compl., DE [11], ¶ 11. The same day, in order to secure repayment of the amount owed pursuant to the Note, the Homeowner Defendants executed and delivered a mortgage in favor of Eastern encumbering the Subject Property (the "Mortgage"). *See* Brown Aff. ¶ 4; Am. Compl. ¶ 12. On January 18, 2008, the Mortgage was duly recorded in the Suffolk County Clerk's Office in Liber M00021660 at Page 275. *See* Brown Aff. ¶ 4.

Pursuant to the Note, the Robinsons were obligated to make monthly principal and interest payments no later than the first day of the month beginning on March 1, 2008. *See* Note § 3(A). If they failed to pay the full amount of each monthly payment on the date that it was due, they would be in default, and a payment received after fifteen days from the date on which it was due would be subject to a late charge in the amount of 5% of the overdue payment. *Id.* at § 6(A), (B). If the Robinsons did not cure the default after receiving proper notice from Plaintiff, both the Note and Mortgage allow Plaintiff to accelerate the loan and demand immediate payment in full of all outstanding principal and interest. *See id.* at § 6(C); Mortgage § 22. If the Robinsons failed to make immediate payment in full, Plaintiff would be entitled to "bring a lawsuit to take away all of [their] remaining rights in the Property and have the Property sold." Mortgage § 22. Although the Note provided for an initial monthly payment and interest rate of $2,487.20 and 12.99%, respectively, the monthly payment and interest rate were scheduled to decrease at set intervals established in an Addendum to Note. *See* Note § 3. However, on June 21, 2011, the Homeowner Defendants signed a Modification to Note (the "Note Modification"), amending the Note's interest rate to 9.49% per year through the life of the Note, deferring the sum of $38,007.05, and providing that the monthly principal and interest payment would be $1,922.64 until the Note's February 1, 2038 maturity date. *See* Note Modification ¶¶ 3-5. The Note Modification further provides that "[t]he principal balance due on the Note, effective June 1, 2011, is $224,128.81." *Id.* at ¶ 2.

Plaintiff alleges that the Robinsons failed to make the required monthly payment due on April 1, 2013, as well as all subsequent monthly payments thereafter. *See* Am. Compl. ¶ 16; Brown Aff. ¶ 7. As required by the Mortgage and N.Y. Real Prop. Acts. Law § 1304, Plaintiff sent the Robinsons a ninety-day Notice and a thirty-day Notice to Cure on June 5, 2013 and September 3, 2013, respectively. *See* Am. Compl. ¶¶ 18, 19. On June 5, 2013, Plaintiff filed the ninety-day Notice with the Superintendent of Financial Services as required by N.Y. Real Prop. Acts. Law § 1306. *Id.* at ¶ 20. Plaintiff also accelerated the loan and demanded immediate payment in the amount of $283,549.35, for all outstanding principal, accrued and unpaid interest, protective advances, and late charges. *Id.* at ¶ 22(a).

## B. **Procedural Background**

By way of Complaint dated December 23, 2013, Plaintiff commenced this action, seeking a Judgment of Foreclosure and Sale for the Subject Property. *See* DE [1]. According to Plaintiff, the Robinsons own the Subject Property, and Americredit and L.I. Anesthesiologist hold judgments against Richard Robinson in the amounts of $19,397.09 and $1,542.85, respectively. *See* Am. Compl. ¶¶ 3-6. On January 27, 2014, Plaintiff filed an Amended Complaint, adding Quinn Robinson as a defendant as "an individual and a tenant at the Subject Property," and seeking to "foreclose her interest, if any, in the Subject Property." *Id.* at ¶ 7. On November 21, 2014, Plaintiff filed a Proposed Stipulation to Permit Plaintiff to File and Serve its Second Amended Complaint, seeking to name Ian Robinson as a defendant as "another person residing at the property." *See* DE [25-1] ¶ 5. On November 24, 2014, Judge Spatt denied

Plaintiff's request to further amend the Amended Complaint without prejudice, but directed the parties to file a proposed stipulation with an amended caption. *See* DE [26]. To date, no such stipulation amending the caption has been filed, and Ian Robinson is not a party to this action.

On January 22, 2015, the Homeowner Defendants filed their Answer to the Amended Complaint, in which they asserted affirmative defenses and two counterclaims. *See* DE [29]. According to the Robinsons, Plaintiff violated a July 2, 2014 Discharge Order of the United States Bankruptcy Court, which released them from various personal obligations, including repayment of the Note. *See* Countercl. ¶¶ 66-69; *see also Robinson*, 2016 WL 482024, at *2 (describing the bankruptcy discharge and the Homeowner Defendants' counterclaims). On July 1, 2015, Plaintiff filed a motion for summary judgment against the Homeowner Defendants, and on October 23, 2015, the Homeowner Defendants filed a cross-motion for summary judgment against Plaintiff. *See* DEs [44], [54]. In a February 4, 2016 Memorandum of Decision and Order, Judge Spatt granted Plaintiff's motion for summary judgment and denied the Homeowner Defendants' cross-motion for summary judgment. *See Robinson*, 2016 WL 482024, at *6. Judge Spatt further ordered that the case was to remain open to the extent that Plaintiff intended to pursue default judgments against the Defaulting Defendants. *Id.*

On February 12, 2016, Plaintiff filed the instant motion for a default judgment against the Defaulting Defendants, seeking to extinguish their interest, if any, in the Subject Property. *See* Memorandum of Law in Support of Plaintiff's Motion for

Default Judgment of Foreclosure and Sale ("Pl.'s Mem."), DE [60-4], at 5-6. Eastern also seeks an award of $358,237.96 in damages, including: (i) $224,128.81 for the outstanding principal balance due on the Note; (ii) $60,147.06 for interest accrued on the outstanding principal at an annual rate of 9.49% from April 26, 2013 through February 11, 2016; (iii) $4,157.59 for unpaid late charges incurred from June 16, 2008 through December 18, 2013; (iv) $34,402.45 for negative escrow balance and interest accrued thereon; (v) $35,402.05 for "Deferred Amounts" pursuant to the June 21, 2011 Note Modification; and (iv) *per diem* interest at a rate of $67.06 per day until the date on which judgment is entered. *See* Statement of Amount Due and Owing, DE [60-2]. Plaintiff also seeks to recover a total of $27,644.54 in attorneys' fees and litigation costs payable to the law firm Kriss & Feuerstein LLP ("Kriss & Feuerstein"). *See* Jerold C. Feuerstein Declaration of Services Rendered ("Feuerstein Decl."), DE [60-1], ¶ 10. Finally, Plaintiff seeks entry of a Judgment of Foreclosure and Sale and appointment of Lara Harmel, Esq. as referee to effectuate the sale of the Subject Property. *See* Proposed Judgment of Foreclosure and Sale ("Proposed Judgment"), DE [60-5], at 2-3.

In opposition, the Homeowner Defendants argue that "[t]he Court cannot grant the relief the Plaintiff is seeking" because: (i) the Brown Affidavit submitted in support of the motion "contains numerous defects as it lacks a foundation and is based on computerized records which also lack a foundation"; and (ii) "Plaintiff's request for attorney's fees is based on data that has errors and may not have been contemporaneously maintained." *See* Objection to Plaintiff's Motion Seeking Default

Judgment as Against Non-Appearing Defendants and Further Seeking a Judgment of Foreclosure ("Defs.' Opp'n"), DE [65], ¶ 1.

## II. LEGAL STANDARD

Motions for default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *See id.* Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, "[it] is well established that a party is not entitled to default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound discretion of the court." *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a

proper basis for liability and relief." *Ferrara v. Tire Shop Center*, No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015). Accordingly, the district court must determine whether the plaintiff's allegations establish liability as a matter of law. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("[P]rior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law.") (internal quotation omitted).

In the event that liability is established, the court must ascertain damages with "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). An evidentiary hearing is not required so long as there is a basis, by detailed affidavits and other documentary evidence, for the damages awarded. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

## III. DISCUSSION

### A. <u>Liability</u>

Pursuant to New York law, a plaintiff seeking to foreclose upon a mortgage must demonstrate "the existence of the mortgage, ownership of the mortgage, and the defendant's default in payment on the loan [secured by the mortgage]." *OneWest Bank, N.A. v. Hawkins*, No. 14-CV-4656, 2015 WL 5706945, at *5 (E.D.N.Y. Sept. 2, 2015) (citing *Campaign v. Barba*, 23 A.D.3d 327, 327, 805 N.Y.S.2d 86 (2d Dep't 2005)) (Report and Recommendation), *adopted by*, 2015 WL 5706953 (E.D.N.Y. Sept.

28, 2015). Thus, once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has established a *prima facie* entitlement to judgment, and the burden shifts to the defendant to rebut the plaintiff's evidence. *See BH99 Realty, LLC v. Li*, No. 10-CV-693, 2011 WL 1841530, at *4 (E.D.N.Y. Mar. 16, 2011) (Report and Recommendation), *adopted by*, 2011 WL 1838568 (E.D.N.Y. May 13, 2011); *see also United States v. Watts*, No. 13-CV-3211, 2014 WL 4275628, at *3 (E.D.N.Y. May 28, 2014) ("[O]nce a plaintiff mortgagee in a foreclosure action has established a prima facie case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor.") (Report and Recommendation), *adopted by*, 2014 WL 4293815 (E.D.N.Y. Aug. 28, 2014). In the February 4, 2016 Memorandum of Decision and Order granting Plaintiff's motion for summary judgment, Judge Spatt held that Plaintiff established "by competent documentary evidence, a prima facie foreclosure claim and presumptive entitlement to collect the overdue amount, to the extent possible through a foreclosure and sale of the Premises." *See Robinson*, 2016 WL 482024, at *4. Therefore, and because the instant motion only seeks a default judgment against the Defaulting Defendants, the Court considers whether the Defaulting Defendants' interests, if any, in the Subject Property should be extinguished.

Courts regularly enter default judgments in foreclosure actions against defendants with "nominal interests" in the relevant property, including parties holding subordinate liens or non-owner tenants. *See, e.g., E. Sav. Bank, FSB v. Strez*,

No. 11-CV-1543, 2013 WL 6834806, at *6 (E.D.N.Y. Dec. 20, 2013) (entering default judgment against the "holder of a subordinate lien on the premises" who failed to respond to the complaint); *1st Bridge LLC v. 682 Jamaica Ave., LLC*, No. 08-CV-3401, 2010 WL 4608326, at *2 (E.D.N.Y. July 13, 2010) (Report and Recommendation), *adopted by*, 2010 WL 4607409 (E.D.N.Y. Nov. 4, 2010) (recommending a default judgment be entered against a tenant "declaring her lease to be null and void"); *Christiana Bank & Tr. Co. v. Dalton*, No. 06-CV-3206, 2009 WL 4016507, at *5 (E.D.N.Y. Nov. 17, 2009) (holding that judgments against the defendants were subordinate to a mortgage lien). When a default judgment is entered against a defendant with a "nominal interest" in a property, any such interest in the relevant property is terminated. *See E. Sav. Bank, FSB v. Bright*, No. 11-CV-1721, 2013 WL 3282889, at *2 (E.D.N.Y. June 27, 2013) (extinguishing the interests of a defaulting defendant who held "a subordinate second mortgage on the premises"); *Bank of Am., N.A. v. 3301 Atl., LLC*, No. 10-CV-5204, 2012 WL 2529196, at *14 (E.D.N.Y. June 29, 2012) (collecting cases).

Here, Plaintiff alleges that Defendants Americredit and L.I. Anesthesiologist hold judgments against Richard Robinson in the amount of $19,397.09 and $1,542.85, respectively, and that Quinn Robinson's interest in the Subject Property is limited to her tenancy. *See* Am. Compl. ¶¶ 5-7. According to Plaintiff, each of the Defaulting Defendants' interest in the Subject Property "accrued subsequent to, and is subject and subordinate to, the lien of said Mortgage." *Id.* at ¶ 8. Each of the Defaulting Defendants was properly served with Plaintiff's Summons and Complaint, but failed

to answer or otherwise respond, resulting in the entry of default. *See* DEs [15], [16], [20]. As such, Plaintiff's allegations of liability against the Defaulting Defendants are deemed conceded. *See Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. Because Plaintiff's well-pleaded allegations establish that any judgments that the Defaulting Defendants have against the Robinsons, if liens on the Subject Property, are subordinate to the Mortgage, Plaintiff has established the Defaulting Defendants' nominal liability. *See Christiana Bank & Tr. Co.*, 2009 WL 4016507, at *5. Therefore, the Court recommends that a default judgment be entered against each of the Defaulting Defendants and that their respective interests in the Subject Property, if any, be terminated.

B. **Damages and Remedies**

In light of Judge Spatt's determination that Plaintiff is entitled to a judgment of foreclosure and sale, and this Court's recommendation that a default judgment be entered against the Defaulting Defendants, "[t]he court must also determine the amount of damages, actual or statutory, that may be assessed." *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010). The Second Circuit allows for "an inquest by affidavit, without an in-person court hearing, 'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" *All-Star Mktg. Grp., LLC v. Media Brands Co., Ltd.*, 775 F. Supp. 2d 613, 619 (S.D.N.Y. 2011) (quoting *Transatlantic Marine Claims Agency, Inc.*, 109 F.3d at 111). It is well-established that, "the moving party bears the burden of providing a reasonable basis for determination of damages and should not be

awarded damages if the evidence is not adequate." *In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1160 (E.D.N.Y. 1995); *see also Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 U.S. Dist. LEXIS 129867, at *9 (E.D.N.Y. Aug. 30, 2011) (Report and Recommendation), *adopted by*, 2011 U.S. Dist. LEXIS 127847 (E.D.N.Y. Nov. 4, 2011) ("On a motion for default judgment, a plaintiff has the burden to prove damages to the Court with a reasonable certainty.") (internal quotation omitted).

Here, Plaintiff seeks an award of $358,237.96 in damages, which includes: (i) the outstanding principal balance due on the Note; (ii) interest accrued on the outstanding principal, as well as *per diem* interest until the date on which judgment is entered; (iii) unpaid late charges; (iv) negative escrow balance and interest accrued thereon; and (v) deferred amounts pursuant to the June 21, 2011 Note Modification. *See* Statement of Amount Due and Owing. Plaintiff also seeks to recover a total of $27,644.54 in attorneys' fees and litigation costs payable to Kriss & Feuerstein. *See* Feuerstein Decl. ¶ 10. Finally, Plaintiff seeks entry of a Judgment of Foreclosure and Sale permitting Plaintiff to foreclose upon and sell the Subject Property at auction. *See* DE [11-4].

In opposition, the Robinsons argue that Plaintiff should not be awarded damages because the Affidavit of Eastern's Senior Asset Manager Terry Brown "contains numerous defects as it lacks a foundation and is based on computerized records which also lack a foundation." Defs.' Opp'n ¶ 1. According to the Robinsons, Brown fails to state that she has "actual personal knowledge; [and] instead, [s]he states that [s]he 'has personal knowledge of the facts and circumstances by virtue of

[her] employment at Eastern in the ordinary course of business . . . ." *Id.* at ¶ 3. Relying on *E. Sav. Bank, FSB v. Rabito*, No. 11-CV-2501, 2013 WL 5423786, at *4 (E.D.N.Y. Sept. 26, 2013), in which Magistrate Judge Viktor V. Pohorelsky deemed an affidavit submitted by Brown to be "wholly conclusory," the Robinsons argue that her instant Affidavit is also "flawed and deficient." *See id.* at ¶¶ 1-6. However, in *Rabito*, the court acknowledged "that a mortgage bank's senior manager would be a person with actual knowledge," and observed that, because "Brown's statements [were] made under penalty of perjury . . . [it did] not have a reason to doubt the veracity of the assertions . . . ." 2013 WL 5423786, at *4. Moreover, unlike *Rabito*, where Brown "did not provide a factual basis to substantiate the amounts requested," *id.*, here, Brown has submitted, among other things: (i) an Account History documenting the payments made on the Note; (ii) a Late Charge Schedule summarizing the fees incurred as a result of late monthly payments; and (iii) an Escrow Advance Schedule, as well as documentation substantiating the amounts requested. *See* Brown Aff. ¶¶ 8, 16-18. Finally, to the extent the Homeowner Defendants argue that Brown lacks "actual personal knowledge," in a Reply Affidavit, Brown affirms that she has "actual personal knowledge of the facts of this case and the events that transpired to date . . . ." *See* Reply Affidavit of Terry Brown in Further Support of Statement of Damages ("Brown Reply Aff."), DE [66-1], ¶ 1. Because the Brown Affidavit allows for a determination of damages with "reasonable certainty,"

its alleged deficiencies and flaws do not preclude an award of damages.  *See Credit Lyonnais*, 183 F.3d at 155.[1]

### 1. Outstanding Principal Balance Due on the Note

Pursuant to the terms of the Note, the Robinsons agreed to pay Plaintiff a total of $225,000.00 in principal, plus interest.  *See* Am. Compl. ¶ 11; Note § 1.  Based on her review of the Robinsons' complete Account History, including all transactions associated with the Note and Mortgage since the inception of the loan through and including February 11, 2016, Brown determined that, as of February 11, 2016, the outstanding principal balance owed on the Note was $224,128.81.  *Id.* at ¶ 10.  The Court has reviewed the Account History, and is satisfied that it establishes that the Robinsons failed to pay $224,128.81 in principal on the Note.  Therefore, the Court recommends that Plaintiff be awarded $224,128.81 to recover for the unpaid principal balance.

### 2. Interest Accrued on Unpaid Principal

Plaintiff seeks to recover $60,147.06 for interest accrued on the unpaid principal from April 26, 2013 through and including February 11, 2016.  *See* Brown Aff. ¶ 12.  The Note provides that "[i]nterest will be charged on unpaid principal until the full amount of principal has been paid," and that the Robinsons were required to pay interest on the unpaid principal "both before and after any default . . . and through and after the entry of a judgment of foreclosure."  *See* Note § 2.  Pursuant to

---

[1] Although the Homeowner Defendants also argue that "it is impossible to ascertain what [certain entries in the Account History] mean or why they exist," *see* Defs.' Opp'n ¶ 7, in her Reply Affidavit, Brown clarified the significance of any such entry and explained the manner in which they affected the total unpaid balance on the Note.  *See* Brown Reply Aff. ¶¶ 4-5.

the June 21, 2011 Note Modification, interest accrued on the unpaid principal balance at a rate of 9.49% for the remaining life of the Note. *See* Brown Aff. ¶ 5. Plaintiff's allegations establish that the Robinsons failed to make the payment due on April 1, 2013, as well as every payment due thereafter.[2] *See* Am. Compl. ¶ 16; Brown Aff. ¶ 7. However, Plaintiff seeks to recover interest from April 26, 2013 through the date on which judgment is entered. *See* Brown Aff. Ex. 2. Applying the Note's 9.49% annual interest rate to the $224,128.81 outstanding principal balance, interest has accrued at a rate of $58.27 per day.[3] As of the date of this Report and Recommendation, since April 26, 2013, the Robinsons have failed to pay 1,109 days' worth of accrued interest, or a total of $64,621.43. Therefore, the Court recommends that Plaintiff be awarded $64,621.43 to recover for unpaid interest through the date of this Report and Recommendation, and *per diem* interest at a rate of $58.27 per day until the date on which judgment is entered. *See E. Sav. Bank, FSB v. McLaughlin*, No. 13-CV-1108, 2015 WL 5657355, at *5 (E.D.N.Y. Aug. 17, 2015) (recommending award of *per diem* interest in action for judgment of foreclosure and sale).

### 3. Unpaid Late Charges on Monthly Payments

Plaintiff seeks to recover $4,157.59 for unpaid late charges from June 16, 2008 through December 18, 2013. *See* Brown Aff. ¶ 14. Pursuant to the Note, if the

---

[2] Although the Homeowner Defendants made payments after April 1, 2013, those payments were due prior to April 2013. *See* Brown Aff. Ex. 1.

[3] Plaintiff appears to base its *per diem* interest accrual rate of $59.08 on a 360-day year. However, Plaintiff neither cites a provision of the Note or Mortgage providing for a 360-day year, nor offers any explanation for why a 360-day year is more appropriate than a 365-day year. Accordingly, the Court's calculation is based on a 365-day year. *See CadleRock Joint Venture, L.P. v. Negron*, No. 10 Civ. 4553, 2011 WL 6122263, at *2 (S.D.N.Y. Nov. 21, 2011) (Report and Recommendation), *adopted by*, 2012 WL 500606 (S.D.N.Y. Feb. 15, 2012) (calculating *per diem* interest based on 365-day year where the plaintiff offered no basis for relying upon a 360-day year).

Homeowner Defendants failed to make their full monthly payment within fifteen days of the date on which it was due, Plaintiff was entitled to collect a late charge of 5% of the overdue payment of principal and interest. *See* Note § 6(A); *see also E. Sav. Bank, FSB v. Whyte*, No. 13-CV-6111, 2015 WL 790036, at *7 (E.D.N.Y. Feb. 24, 2015) (awarding late fees through the date on which the foreclosure action was commenced); *RCB Equities No. 3, LLC v. Alma Building, LLC*, No. 11-CV-1004, 2012 WL 832263, at *5 (E.D.N.Y. Feb. 22, 2012) (recommending award of $572.24 in late fees). In support of their request, Plaintiff submitted a Late Charge Schedule summarizing the accumulated late charges due through the date on which the loan was accelerated. *See* Brown Aff. Ex. 3. The Court has compared the Late Charge Schedule to the Account History, and is satisfied that the Late Charge Schedule accurately reflects the Homeowner Defendants' accrued late charges. Therefore, the Court recommends that Plaintiff be awarded $4,157.59 for unpaid late charges.

### 4. Escrow Advances and Interest Accrued on Advances

Plaintiff seeks to recover $30,276.70 for escrow advances, and an additional $4,125.75 for interest accrued thereon. *See* Brown Aff. ¶¶ 15-16. Pursuant to the Mortgage, the Robinsons were required to pay Plaintiff for "Escrow Items," which included "all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance . . . ." Mortgage § 3(a). The Mortgage further provides that Plaintiff "may do and pay for whatever is reasonable or appropriate to protect

[its] interest in the Property . . . ." *Id.* at § 9. The Robinsons agreed to pay Plaintiff "any amounts, with interest, which [Plaintiff] spends under this section." *Id.* To that end, courts allow plaintiffs in foreclosure actions to recover similar disbursements. *See OneWest Bank, N.A. v. Denham*, No. 14-CV-5529, 2015 WL 5562980, at *10 (E.D.N.Y. Aug. 31, 2015) (recommending award of $47,426.37 for escrow advances).

Here, Plaintiff has included an Escrow Advance Schedule reflecting the total amount due for taxes and hazard insurance through February 11, 2016. *See* Brown Aff. Ex. 4. Likewise, the cumulative Account History includes records and descriptions of escrow disbursements. *Id.* at Ex. 2. Moreover, Plaintiff has provided substantiation of the amounts it seeks to recover for escrow advances. *Id.* at Ex. 4. Based upon the Court's review of Plaintiff's submissions, the Court is satisfied that Plaintiff is entitled to recover $30,276.70 for escrow advances. Plaintiff has also submitted an Interest on Negative Escrow chart, documenting the changes in the escrow balance, as well as *per diem* interest accruing thereon based on the Note's 9.49% annual interest rate. *See id.* at Ex. 5. However, in calculating the *per diem* interest on the negative escrow balances, Plaintiff again relies on a 360-day year without explanation or citation to a provision of the Note or Mortgage. *Id.* For the reasons discussed above, the Court will rely on a 365-day year in calculating *per diem* interest and the total interest owed on unpaid escrow advances. *See CadleRock Joint Venture*, 2011 WL 6122263, at *2. Therefore, as shown in the chart below, Plaintiff is entitled to recover $4,821.73 for interest on escrow advances through the date of this Report and Recommendation.

| Escrow Balance | Interest Rate | Start Date | Per Diem | Days | Total |
|---|---|---|---|---|---|
| $3,390.96 | 9.49% | 5/21/2013 | $0.88 | 17 | $14.96 |
| $2,523.63 | 9.49% | 6/7/2013 | $0.66 | 4 | $2.64 |
| $5,362.63 | 9.49% | 6/11/2013 | $1.39 | 50 | $69.50 |
| $4,495.30 | 9.49% | 7/31/2013 | $1.17 | 160 | $187.20 |
| $8,828.23 | 9.49% | 1/7/2014 | $2.30 | 129 | $296.70 |
| $13,161.16 | 9.49% | 5/16/2014 | $3.42 | 21 | $71.82 |
| $16,403.16 | 9.49% | 6/6/2014 | $4.26 | 214 | $911.64 |
| $20,752.03 | 9.49% | 1/6/2015 | $5.40 | 133 | $718.20 |
| $25,100.90 | 9.49% | 5/19/2015 | $6.53 | 121 | $790.13 |
| $27,451.90 | 9.49% | 9/17/2015 | $7.14 | 35 | $249.90 |
| $25,820.33 | 9.49% | 10/22/2015 | $6.71 | 56 | $375.76 |
| $30,276.70 | 9.49% | 12/17/2015 | $7.87 | 144 | $1,133.28 |
| | | | | | **$4,821.73** |

Based on the foregoing, the Court recommends that Plaintiff be awarded $35,098.43 to recover for escrow advances and interest accrued thereon through the date of this Report and Recommendation. The Court further recommends that Plaintiff be awarded *per diem* interest on unpaid escrow advances at a rate of $7.87 per day until the date on which judgment is entered.

5. Deferred Amounts

Plaintiff also seeks to recover $35,402.05 for deferred amounts pursuant to the June 21, 2011 Note Modification. As part of the Modification, Plaintiff agreed to defer various amounts totaling $38,007.05, including specified amounts of principal, accrued interest, negative escrow, late charges, inspection fees, and legal fees and costs. *See* Brown Aff. ¶ 18. The Note Modification further provides that the deferred amount "shall not accrue interest." *See* Note Modification ¶ 5. According to Plaintiff, the Homeowner Defendants made a payment of $2,605.00, bringing the deferred balance to $35,402.05. *See* Brown Aff. ¶ 19. Therefore, the Court recommends that Plaintiff be awarded $35,402.05 to recover for the remainder of the deferred amount

pursuant to the Note Modification. *See Whyte*, 2015 WL 790036, at *7 (awarding $215,356.71 to recover amounts deferred pursuant to a loan modification).

### 6. Post-Judgment Interest

An award of post judgment interest is mandatory and is governed by federal statute. *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) (citing *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004)). Pursuant to 28 U.S.C. § 1961, "interest shall be calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a). However, it is "well established that parties may deviate from the rate of interest by their own agreement that specifically addresses post-judgment interest." *McEachin v. McGinnis*, No. 02-CV-6005, 2008 WL 189669, at *1 (W.D.N.Y. Jan. 18, 2008); *see also Westinghouse Credit Corp.*, 371 F.3d at 101 ("[P]arties may by contract set a post-judgment rate at which interest shall be payable.").

Here, Plaintiff seeks to recover post-judgment interest at the rate provided for in the Note, as opposed to the statutory rate pursuant to 28 U.S.C. § 1961. *See* Pl.'s Mem. at 6-7. The Note provides that, "[t]he interest rate required by this Section 2 . . . [applies] both before and after any default described in Section 6(B) of this Note, and through and after the entry of a judgment of foreclosure." *See* Note § 2. Because the Note specifically provides for post-judgment interest at the rate in effect at the time of default, the Court recommends that Plaintiff be awarded post-judgment

interest at a rate of 9.49% as opposed to the rate provided for pursuant to 28 U.S.C. § 1961.

7. <u>Attorneys' Fees</u>

Plaintiff seeks to recover $25,725.00 in attorneys' fees payable to Kriss & Feuerstein. *See* Feuerstein Decl. ¶ 10. Pursuant to the "American Rule," attorneys' fees are recoverable when provided for by statute or in an enforceable contract. *See Summit Valley Indus., Inc. v. United Brotherhood of Carpenters & Joiners*, 456 U.S. 717, 721, 102 S. Ct. 2112, 2114 (1982); *see also U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004) ("[P]arties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law."). Here, both the Note and the Mortgage provide for reasonable attorneys' fees in the event Plaintiff brings a lawsuit in response to the Homeowner Defendants' default. *See* Note § 6(E); Mortgage § 22. Therefore, Plaintiff is entitled to an award of reasonable attorneys' fees.

Nevertheless, the party seeking to recover attorneys' fees bears the burden of establishing the reasonableness and necessity of hours spent and rates charged. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1139 (2d Cir. 1983). In determining a reasonable attorneys' fees award, both the Supreme Court and the Second Circuit have held that "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d

Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2007)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1393 (1983). In calculating the lodestar, the court should look to what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay. *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 184.

Here, Plaintiff seeks to recover $25,725.00 in attorneys' fees, which is based on 85.75 hours of work performed by four attorneys, including: 22.6 hours by partner Jerold C. Feuerstein, 25.6 hours by associate Jason Liebowitz, 3.25 hours by associate Joseph Vozza, and 34.3 hours by associate Greg Friedman. *See* Feuerstein Decl. ¶ 6. Kriss & Feuerstein billed each attorney's time at an hourly rate of $300. *Id.*

    *i.*   *Reasonable Hourly Rate*

For purposes of the lodestar, "[a] reasonable [hourly] rate is the rate that a reasonable, paying client would be willing to pay." *Barrella v. Vill. of Freeport*, 43 F. Supp. 3d 136, 189 (E.D.N.Y. 2014) (internal quotation omitted). Courts in the Second Circuit adhere to the forum rule, "which states that a district court should generally use the prevailing hourly rates in the district where it sits." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 155 (E.D.N.Y. 2013) (citing *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009)); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1998) ("[T]he 'prevailing community' the district court should consider to determine the 'lodestar' figure is 'the district in which the court sits.'") (quoting *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals. *See Ferrara v. CMR Contracting LLC*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) ("In recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 for partners, $100 to $300 for associates and $70 to $100 for paralegal assistants."). In determining whether an hourly rate is reasonable, courts must take into account "the nature of [the] representation and type of work involved . . . ." *Bodon v. Domino's Pizza, LLC*, No. 09-CV-2941, 2015 WL 3889577, at *8 (E.D.N.Y. June 4, 2015).

Mr. Feuerstein is a partner of Kriss & Feuerstein and has been practicing law for more than twenty-two years. *See* Feuerstein Decl. ¶ 8. Although Mr. Feuerstein ordinarily bills his time at an hourly rate of $475, Plaintiff requests an hourly rate of $300 for Mr. Feuerstein in this matter. *Id.* An hourly rate of $300 is reasonable for a partner with Mr. Feuerstein's experience in this district. *See, e.g.*, *Whyte*, 2015 WL 790036, at *8 (awarding hourly rate of $300 to Mr. Feuerstein); *E. Sav. Bank, FSB v. Evancie*, No. 13-CV-878, 2014 WL 1515643, at *5 (E.D.N.Y. Apr. 18, 2014) (awarding hourly rate of $325 to Mr. Feuerstein); *E. Sav. Bank v. Beach*, No. 13-CV-341, 2014 WL 923151, at *14 (E.D.N.Y. Mar. 10, 2014) (awarding hourly rate of $300 to Mr. Feuerstein). Therefore, the Court recommends an hourly rate of $300 for Mr. Feuerstein.

Mr. Freidman, Mr. Liebowitz, and Mr. Vozza are associates at Kriss & Feuerstein and ordinarily bill their time at an hourly rate of $350. *See* Feuerstein

Decl. ¶ 8. However, Plaintiff fails to provide their credentials or any other information that would allow the Court to assess whether their requested hourly rate of $300 is reasonable. *Id.* The Court notes, however, that courts in this district have previously awarded hourly rates between $175 and $200 for Kriss & Feuerstein associates in foreclosure actions. *See, e.g.*, *Beach*, 2014 WL 923151, at *14 (awarding hourly rate of $200 for Mr. Vozza); *Bright*, 2013 WL 2382889, at *5 (awarding hourly rate of $175 for Mr. Liebowitz). However, because *Bright* and *Beach* were decided in 2013 and 2014, respectively, the Court considers an hourly rate of $250 to be reasonable and appropriate to account for the passage of time. Moreover, an hourly rate of $250 is reasonable in light of the fact that this was not strictly a default judgment action, as the Robinsons asserted affirmative defenses and counterclaims. Therefore, the Court recommends an hourly rate of $250 for Mr. Friedman, Mr. Liebowitz, and Mr. Vozza.

### ii. *Reasonable Number of Hours*

A party seeking to recover attorneys' fees "bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-CV-3027, 2015 WL 1529772, at *2 (E.D.N.Y. Apr. 2, 2015) (internal quotation omitted). An application for attorneys' fees must be supported "by accurate, detailed, and contemporaneous time records." *La Barbera v. ASTC Labs, Inc.*, 752 F. Supp. 2d 263, 277 (E.D.N.Y. 2010); *see also Gesualdi v. Gen. Concrete, Inc.*, No. 11-CV-1866, 2013 WL 1192967, at *9 (E.D.N.Y. Feb. 1, 2013) ("The absence of contemporaneous records precludes any fee award in all but the most

extraordinary of circumstances.") (quoting *Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010)). Contemporaneous time records submitted in support of an application need not contain great detail so long as they identify the general subject matter of time expenditures. *See Perdue v. City Univ. of New York*, 13 F. Supp. 2d 326, 345 (E.D.N.Y. 1998).

Here, the Homeowner Defendants argue that Plaintiff's application for attorneys' fees "is defective in that it is not supported by contemporaneous time records," and that, "nowhere does Plaintiff state that the information in the chart is based on contemporaneous time records." Defs.' Opp'n ¶ 12. However, the contemporaneous time record requirement "does not require that the . . . records themselves be produced" so long as the party seeking fees provides "documentation that is based upon, or is a reconstruction of, those records." *Electra Entm't Grp. Inc. v. Santangelo*, No. 06 Civ. 11520, 2008 WL 400934, at *1 (S.D.N.Y. Feb. 11, 2008). Here, Plaintiff provided an attorneys' fee chart documenting the date, task performed, billing attorney, time spent, hourly rate charged, and overall fee. *See* Feuerstein Decl. ¶ 6. Although it is true that Feuerstein does not explicitly state that the work identified in the chart is based on contemporaneous time records, in a Reply Declaration, he states that he "re-reviewed the time records in this action." *See* Declaration in Further Support of Services Rendered ("Feuerstein Reply Decl."), DE [66], ¶ 3. Based on this, as well as the information contained in the attorneys' fee chart, the Court infers that the chart documenting Kriss & Feuerstein's time spent on this matter was derived from the firm's contemporaneous time records. *Kingvision*

*Pay-per-View, Ltd. v. Perez*, No. 06 Civ. 3613, 2008 WL 3982881, at *7 n.8 (S.D.N.Y. Aug. 27, 2008) ("The Court infers from [plaintiff's counsel's] affidavit that the chart documenting her firm's time expended on this case was derived from contemporaneous time records."). Moreover, the Court is satisfied that the information contained therein is sufficient to "identify the general subject matter of [the] time expenditures." *Perdue*, 13 F. Supp. 2d at 345.

Nevertheless, courts should not award attorneys' fees for "hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation." *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (quoting *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1940). In reducing an award due to excessive hours, a court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday v. Cty. of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). Rather, it is within the court's discretion to reduce an award of attorneys' fees by a specific percentage for duplicative, vague, or excessive billing entries. *See In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) ("[T]he district court has the authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application.") (internal quotation omitted).

Upon review of Kriss & Feuerstein's time records, the Court considers certain entries to be excessive or unreasonable. For example, on January 23, 2015, Mr. Leibowitz billed 1 hour for receiving a one-line letter from defense counsel to the ECF clerk updating defense counsel's address. *See* Feuerstein Decl. ¶ 6. Likewise, on May

27, 2015, Mr. Vozza billed .75 hours for drafting and filing a Notice of Appearance. *Id.* Moreover, attorneys also billed for clerical tasks, which are ordinarily not recoverable. *See DeMarco v. Ben Krupinski Gen. Contractor, Inc.*, No. 12-CV-573, 2014 WL 3696020, at *9 (E.D.N.Y. July 22, 2014) (reducing award to account for "time spent on clerical tasks, such as faxing documents, preparing duplicates, serving papers on defendants, and filing documents") (internal citation omitted). For example, on January 22, 2014 and February 27, 2014, Mr. Feuerstein billed .5 and .6 hours, respectively, for revising an affidavit of service and uploading it to the ECF Docket. *See* Feuerstein Decl. ¶ 6.

Rather than scrutinizing the propriety of each individual time entry, the Court recommends an across-the-board percentage cut of ten percent to account for excessive or otherwise improper billing. *See Marshall v. Deutsche Post DHL*, No. 13-CV-1471, 2015 WL 5560541, at *12 (E.D.N.Y. Sept. 21, 2015) (applying 10% across-the-board reduction in hours to account for excessive and duplicative time); *Dominguez v. B.S. Supermarket, Inc.*, No. 12-CV-7247, 2015 WL 1439880, at *17 (E.D.N.Y. Mar. 27, 2015) (applying 10% across-the-board reduction to account for excessive billing entries and time billed for administrative tasks). Accordingly, applying the reasonable hourly rate to the reasonable number of hours, as shown in the chart below, the Court recommends that Plaintiff be awarded $20,312.00 to recover for attorneys' fees.

| Attorney | Recommended Hourly Rate | Recommended Number of Hours | Total |
|---|---|---|---|
| JCF | $300 | 20.34 | $6,102.00 |
| JL | $250 | 23.04 | $5,760.00 |
| JV | $250 | 2.93 | $732.50 |
| GF | $250 | 30.87 | $7,717.50 |
| | | | **$20,312.00** |

8. Litigation Costs

Plaintiff seeks to recover $1,919.54 in litigation costs, including filing fees, process server fees, foreclosure title search and continuation, filing fees of *lis pendens*, certified copies of the Complaint, photocopies, and postage charges. *See* Bill of Costs, DE [60-3]. Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). However, the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." *Ganci*, 2015 WL 1529772, at *8 (quoting *Pennacchio v. Powers*, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011)). Here, Plaintiff has provided substantiation of the costs it seeks to recover, including receipts and invoices, and such costs are ordinarily recoverable in a foreclosure action. *See, e.g.*, *Wells Fargo Bank, N.A. v. Landi*, No. 13-CV-5822, 2015 WL 5655810, at *9 (E.D.N.Y. Aug. 14, 2015) (Report and Recommendation), *adopted by*, 2015 WL 5657358 (E.D.N.Y. Sept. 22, 2015) (recommending an award of litigation costs, including document reproduction, deliveries, filing fees, online searches, legal research, postage, and service fees). Moreover, both the Note and Mortgage provide for the recovery of litigation costs. *See*

Note § 6(E); Mortgage § 22. Therefore, the Court recommends that Plaintiff be awarded $1,919.54 to recover its litigation costs.

### 9. Judgment of Foreclosure and Sale and Appointment of Referee

A plaintiff is entitled to foreclose upon and sell a property if it demonstrates "the existence of an obligation secured by a mortgage, and a default on that obligation." *1st Bridge LLC*, 2010 WL 4608326, at *3; *see also OneWest Bank, N.A. v. Cole*, No. 14-CV-3078, 2015 WL 4429014, at *1 (E.D.N.Y. July 17, 2015) (authorizing foreclosure and sale of property upon entry of default judgment). Further, courts routinely appoint referees to effectuate the sale of foreclosed properties. *See, e.g.*, *PMB Tech. Servs., LLC v. Mazoureix*, No. 14-CV-4834, 2015 WL 5664823, at *1 (E.D.N.Y. Sept. 23, 2015) (awarding a judgment of foreclosure and sale under the supervision of a referee); *Evancie*, 2014 WL 1515643, at *1. Based on Judge Spatt's determination that Plaintiff established its "presumptive entitlement to collect the overdue amount, to the extent possible through a foreclosure and sale of the Premises," *see Robinson*, 2016 WL 482024, at *4, as well as for the reasons discussed herein, the Court recommends that a Judgment of Foreclosure and Sale be entered in a form substantially similar to that proposed by Plaintiff, and that Lara Harmel, Esq. be appointed as referee to effectuate the foreclosure and sale of the Subject Property. The Court further recommends that the proceeds of the sale be applied to the amount owed on the Note as set forth above. *See Denham*, 2015 WL 5562980, at *14 (recommending that the relevant property be foreclosed upon and sold with the proceeds being applied to the outstanding amount owed on the note).

## IV.   CONCLUSION

For the reasons set forth herein, the Court recommends that Plaintiff's motion for a default judgment be granted and that the Defaulting Defendants' interest in the Subject Property, if any, be extinguished.   The Court further recommends that Plaintiff be awarded a total of $385,639.85 to recover for the unpaid principal balance on the Note, interest accrued on the unpaid principal balance through the date of this Report and Recommendation, late charges, escrow advances and interest accrued thereon through the date of this Report and Recommendation, deferred amounts, attorneys' fees, and litigation costs.   The Court further recommends that Plaintiff be awarded *per diem* interest in the amount of $66.14 per day until the date on which judgment is entered, and post-judgment interest at a rate of 9.49% as provided for in the Note.   Finally, the Court recommends that an Order similar to Plaintiff's Proposed Judgment of Foreclosure and Sale be entered and that Lara Harmel, Esq. be appointed as referee to effectuate the foreclosure and sale of the Subject Property.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiff by electronic filing on the date below.   Plaintiff is directed to serve a copy of it on Defendants and promptly file proof of serve by ECF.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008);

*Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:      Central Islip, New York      <u>s/ Steven I. Locke</u>
               May 9, 2016               STEVEN I. LOCKE
                                         United States Magistrate Judge