FILED
CLERK
6/1/2016 2:53 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
EASTERN SAVINGS BANK, FSB,

                Plaintiff,

    -against-

RICHARD ROBINSON A/K/A RICHARD A. ROBINSON, GAIL ROBINSON, AMERICREDIT FINANCIAL SERVICES, INC., LI ANESTHESIOLOGIST PLLC, and QUINN ROBINSON,

                Defendants.
----------------------------------------------------------------------x

**ORDER**
13-cv-7308 (ADS)(SIL)

**APPEARANCES:**

**Kriss & Feuerstein, LLP**
*Attorneys for the Plaintiff*
360 Lexington Avenue, Suite 1200
New York, NY 10017
    By:    Jerold C. Feuerstein, Esq., Of Counsel

**Craig D. Robins, Esq.**
*Attorney for the Defendants Richard Robinson a/k/a Richard A. Robinson and Gail Robinson*
180 Froehlich Farm Blvd.
Woodbury, NY 11797

**NO APPEARANCE:**

**Americredit Financial Services, Inc.**
*Defendant*

**LI Anesthesiologist PLLC**
*Defendant*

**Quinn Robinson**
*Defendant*

**SPATT, District Judge:**

On December 23, 2013, the Plaintiff Eastern Savings Bank, FSB ("Plaintiff" or the "Bank") commenced this diversity mortgage foreclosure action under Article 13 of the New York Real Property Actions and Proceedings Law ("RPAPL"), seeking to foreclose its

1

security interest in a parcel of real property owned by the Defendants Richard Robinson a/k/a Richard A. Robinson and Gail Robinson (the "Homeowners"), located at 734 Carlton Road in West Babylon (the "Residence").

In addition to the Homeowners, the Plaintiff named Americredit Financial Services, Inc. ("Americredit"), LI Anesthesiologist PLLC ("LI Anesthesia"), and Quinn Robinson (together with Americredit and LI Anesthesia, the "Defaulting Defendants") as nominal Defendants in this action, whose interests in the Residence, if any, the Bank seeks to extinguish in order to quiet title to the property.

On January 22, 2015, the Homeowners filed an answer to the complaint and asserted various affirmative defenses and counterclaims.

To date, the Defaulting Defendants have not submitted answers to the complaint, or otherwise appeared in this action. On July 1, 2015, the Clerk of the Court noted the Defaulting Defendants' default.

Also on July 1, 2015, the Plaintiff moved under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 for summary judgment on its complaint, and dismissal of the Homeowners' affirmative defenses and counterclaims.

On October 23, 2015, the Homeowners cross-moved under Rule 56 for summary judgment against the Bank on one of their counterclaims, namely, a cause of action based on an alleged breach of a bankruptcy discharge order, and sought to dismiss the complaint and recover associated monetary damages.

By Memorandum of Decision and Order dated February 4, 2016, this Court granted the Bank's motion for summary judgment in its entirety; dismissed the Homeowners' affirmative defenses and counterclaims; and denied the Homeowners' cross-motion for

summary judgment in all respects. See E. Sav. Bank, FSB v. Robinson, 2016 U.S. Dist. LEXIS 13529 (E.D.N.Y. Feb. 4, 2016) (Spatt, J.). The Court directed the Bank to submit a proposed judgment of foreclosure and sale for the Court's review within 10 days of that order. Further, the Court held that, to the extent the Bank intended to pursue default judgments against the Defaulting Defendants, the case would remain open for that limited purpose.

On February 12, 2016, the Bank filed a motion under Fed. R. Civ. P. 55, seeking the entry of a default judgment against the Defaulting Defendants. In accordance with the Court's directive, the Bank also submitted a proposed judgment of foreclosure and sale purporting to resolve this case in its entirety.

On February 16, 2016, the Court referred this matter to United States Magistrate Judge Steven I. Locke for a recommendation as to whether the Bank's motion for a default judgment should be granted, and if so, the relief to be granted, including whether the proposed judgment of foreclosure and sale properly resolves this matter.

On May 9, 2016, Judge Locke issued a Report and Recommendation (the "R&R"), recommending that: (i) the Bank's motion for a default judgment be granted; (ii) the Defaulting Defendants' interest in the Residence, if any, be extinguished; and (iii) the Bank be awarded damages totaling $385,639.85, representing the unpaid principal balance due on the underlying promissory note, together with interest, late charges, escrow advances, deferred amounts, attorneys' fees, and costs. See E. Sav. Bank v. Robinson, 2016 U.S. Dist. LEXIS 62005 (E.D.N.Y. May 9, 2016). However, as the Court noted in its previous opinion, in light of a discharge order obtained by the Homeowners in a bankruptcy proceeding, the Bank is only entitled to collect these amounts to the extent possible through a foreclosure

and sale of the Residence, and may not seek to recover a personal judgment against the Homeowners for any deficiency remaining after the sale.

Judge Locke also recommended that a judgment of foreclosure and sale in a form substantially similar to that proposed by the Bank should be entered, and that Lara Harmel, Esq. be appointed as referee to effectuate the sale of the Residence.

Presently before the Court is a series of written objections, timely filed by the Homeowners on May 24, 2016, pursuant to 28 U.S.C. § 636(b)(1),

## I. Discussion

The relevant facts and procedural history of this case were set forth in detail in the prior opinion of this Court and the R&R by Magistrate Judge Locke, and will not be repeated here. The Court will discuss the underlying motion record only to the extent necessary to resolve the present objections.

### A. The Standard of Review

To the extent that the Homeowners make specific and timely written objections to the R&R, the Court must review *de novo* those portions of the report to which objection is made. See Leser v. U.S. Bank Nat'l Ass'n, No. 09-cv-2362, 2013 U.S. Dist. LEXIS 32464, at *6 (E.D.N.Y. Mar. 7, 2013) (quoting 28 U.S.C. § 636(b)(1)(C)). In this regard, "*[d]e novo* review requires that the court 'give fresh consideration to those issues to which specific objections have been made'" and "examine the entire record, and make an independent assessment of the magistrate judge's factual and legal conclusions.'" Singleton v. Caron, No. 03-cv-455, 2006 U.S. Dist. LEXIS 49117, at *5-*6 (N.D.N.Y. July 18, 2006) (quoting Almonte v. N.Y. State Div. of Parole, No. 04-cv-484, 2006 U.S. Dist. LEXIS 2926, at *15 (N.D.N.Y. Jan. 18, 2006)). After a review, "the district court 'may accept, reject, or modify, in whole or in part, the

4

findings or recommendations made by the magistrate judge.'" Leser, 2013 U.S. Dist. LEXIS 32464, at *6 (quoting 28 U.S.C. § 636(b)(1)).

However, "where 'the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report and recommendation strictly for clear error.'" Id. at *6-*7 (quoting Zaretsky v. Max-Aids, Inc., No. 10-cv-3771, 2012 U.S. Dist. LEXIS 64291, at *4 (E.D.N.Y. June 18, 2012), aff'd, 529 F. App'x 97 (2d Cir. 2013)). In this regard, it has been noted that:

> It is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a "second bite at the apple" when they file objections to a Report and Recommendation, as the "goal of the federal statute providing for the assignment of cases to magistrates is to 'increase the overall efficiency of the federal judiciary.'" McCarthy v. Manson, 554 F. Supp. 1275, 1286 (D. Conn. 1982), aff'd, 714 F.2d 234 (2d Cir. 1983) (quoting Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. 1982) (en banc)) (footnote omitted). "The purpose of the Federal Magistrates Act is to relieve courts of unnecessary work." Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980). There is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge.

Camardo v. GM Hourly-Rate Emples. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992); see Mario v. P & C Food Mkts., 313 F.3d 758, 766 (2d Cir. 2002) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)").

As courts in this Circuit have observed, "[c]lear error review is especially appropriate where the objections are merely copied verbatim from the objecting party's earlier briefing." Holloway v. Colvin, No. 14-cv-5165, 2016 U.S. Dist LEXIS 44366, at *3 (S.D.N.Y. Mar. 31, 2016) (citations omitted); see King v. City of New York, Nos. 12-cv-2344

& 13-cv-0037, 2014 U.S. Dist. LEXIS 140790, at *11 (E.D.N.Y. Sept. 30, 2014) (reviewing objections for clear error where, "[n]ot only [were they] simply an attempt to rehash the same arguments that the magistrate judge considered and found deficient, [but a] section of [the objector's] brief [was] in fact identical – word for word – to the equivalent portion of" his opposition to the underlying motion); Brooks v. Hogan, No. 09-cv-743, 2013 U.S. Dist. LEXIS 44739, at *2-*3 (N.D.N.Y. Mar. 28, 2013) (finding that *de novo* review was not warranted by a party's submission, which was "filed as an objection," but was "in fact, a near-verbatim recitation of his earlier-filed response in opposition to" the underlying motion); Weinrauch v. N.Y. Life Ins. Co., No. 12-cv-5010, 2013 U.S. Dist. LEXIS 37142, at *6 (S.D.N.Y. Mar. 18, 2013) (reviewing objections for clear error where the objector "rehashe[d] his previous arguments to" the Magistrate Judge, and "indeed, the majority of his objection [was] verbatim quotation from his previous submission").

Further, the Second Circuit has held that "bare statement[s], devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority," are insufficient to warrant *de novo* review. Mario, 313 F.3d at 769; see Rothenberger v. N.Y. City Police Dep't, No. 06-cv-868, 2008 U.S. Dist. LEXIS 46614, at *3 (E.D.N.Y. June 16, 2008) (finding the plaintiff's objections to be insufficient where they consisted of "little more than a list of documents and facts that he believe[d] the court should have considered in arriving at its findings" and failed to "provide any reasoning – legal or otherwise – to support his argument that [the] Magistrate Judge [ ] erred either in her consideration of the evidence or in arriving at any conclusion or recommendation").

With these standards in mind, the Court will turn to the Homeowners' specific objections.

### B.  As to the Sufficiency of the Bank's Supporting Affidavit

The Homeowners contend that the affidavit of Senior Asset Manager Terry Brown, which the Bank submitted in support of its request for damages, was "defective" insofar as it lacked a proper evidentiary foundation. In this regard, the Homeowners appear to contend that Brown failed to adequately demonstrate that she is proficient in reading and interpreting the computerized mortgage files relied upon by the Bank in computing the amounts due under the note and mortgage.

Further, the Homeowners argue that, although Judge Locke concluded that Brown's affidavit was sufficient to permit a calculation of the Bank's damages with "reasonable certainty," they believe that "absolute certainty should be the only acceptable standard." See Objections, DE [69], at 5. The Court finds that both of these contentions are without merit.

First, the Homeowners' argument regarding the evidentiary value of Brown's affidavit is a near-verbatim reproduction of the argument the Homeowners unsuccessfully submitted to Judge Locke, and is therefore insufficient to warrant *de novo* review at this juncture. Compare Defs. Partial Opp. to Pl. Mot. for Def. J., DE [65], at 2-5, with Objections, DE [69], at 2-3. Rather, the Court reviews this portion of the R&R for clear error, and finding none, now concurs in both its reasoning and its result.

In this regard, the Court notes that Judge Locke thoroughly addressed this precise issue, writing that:

7

> In opposition, the Robinsons argue that Plaintiff should not be awarded damages because the Affidavit of Eastern's Senior Asset Manager Terry Brown "contains numerous defects as it lacks a foundation and is based on computerized records which also lack a foundation." Defs.' Opp'n ¶ 1. According to the Robinsons, Brown fails to state that she has "actual personal knowledge; [and] instead, [s]he states that [s]he 'has personal knowledge of the facts and circumstances by virtue of [her] employment at Eastern in the ordinary course of business ..." Id. at ¶ 3. Relying on E. Sav. Bank, FSB v. Rabito, No. 11-CV-2501, 2013 WL 5423786, at *4 (E.D.N.Y. Sept. 26, 2013), in which Magistrate Judge Viktor V. Pohorelsky deemed an affidavit submitted by Brown to be "wholly conclusory," the Robinson's argue that her instant Affidavit is also "flawed and deficient." See id. at ¶¶ 1-6. However, in Rabito, the court acknowledged "that a mortgage bank's senior manager would be a person with actual knowledge," and observed that, because "Brown's statements [were] made under penalty of perjury ... [it did] not have a reason to doubt the veracity of the assertions ..." 2013 WL 5423786, at *4. Moreover, unlike Rabito, where Brown "did not provide a factual basis to substantiate the amounts requested," id., here, Brown has submitted, among other things: (i) an Account History documenting the payments made on the Note; (ii) a Late Charge Schedule summarizing the fees incurred as a result of late monthly payments; and (iii) an Escrow Advance Schedule, as well as documentation substantiating the amounts requested. See Brown Aff. ¶¶ 8, 16-18. Finally, to the extent the Homeowner Defendants argue that Brown lacks "actual personal knowledge," in a Reply Affidavit, Brown affirms that she has "actual personal knowledge of the facts of this case and the events that transpired to date ..." See Reply Affidavit of Terry Brown in Further Support of Statement of Damages ..., DE [66-1], ¶ 1.

R&R at 12-13.

The Homeowners argue conclusorily that, notwithstanding Judge Locke's "exceptionally thorough," "meticulous," and "comprehensive" R&R, it remains true that Brown's affidavit lacks a proper "foundation" because she "fail[ed] to indicate that she is experienced in reviewing computerized information." See Objections at 2, 5. However, the Homeowners fail to raise any particularized challenges to the authenticity or trustworthiness of Brown's calculations or the documentation upon which they rest. In fact, other than her apparent failure to explicitly state that she has proficiency in reviewing the relevant computer files, the Homeowners provide no specific basis for doubting the overall veracity of her affidavit. In this regard, they do not argue that any particular figure

8

was incorrectly computed, or that a particular document maintained by the bank is inaccurate. Nor do they offer their own calculation of the amounts allegedly due under the note and mortgage. Instead, notwithstanding Judge Locke's reasoned conclusion to the contrary, the Homeowners argue that Bank should be awarded *no* damages whatsoever because Brown did not adequately describe her training as it pertains to reviewing digitally-maintained mortgage files.

However, the Homeowners do not identify any relevant caselaw that they contend might support this position. Nor do they specify what aspects of Judge Locke's reasoning or consideration of the evidence they believe constituted clear error. They contend simply that, for the exact same reasons already argued to Judge Locke, "Brown has still failed to establish a sufficient foundation in order for her affidavit to be probative." Id. The Court disagrees, and under these circumstances, discerns no clear basis for sustaining the Homeowners' objection.

Further, the Homeowners imply that Judge Locke utilized the incorrect legal standard when he determined that Brown's affidavit permitted a calculation of damages with "reasonable certainty." They state, without citation to facts or legal authority, that an "absolute certainty" standard would be more appropriate. However, this contention is contrary to controlling law, and is therefore without merit. See, e.g., Bank of the West v. Sailing Yacht Serendipity, 101 F. Supp. 3d 238, 246 (E.D.N.Y. 2015) (noting that, in passing on a motion for a default judgment, "a district court must [ ] conduct an inquiry in order to ascertain the amount of damages with reasonable certainty" (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999))).

9

Accordingly, to the extent the Homeowners object to the R&R on the ground that it improperly relied upon the affidavit of Terry Brown, their objection is overruled.

C. **As to the Calculation of Attorneys' Fees**

The Homeowners also challenge Judge Locke's computation of the award of attorneys' fees to which the Bank is entitled under the relevant mortgage documents. As described more fully below, this argument is totally without merit, and similarly fails to warrant a *de novo* review.

In a thorough and highly-detailed discussion, Judge Locke undertook to review the billing records submitted by counsel for the Bank, namely, the law firm of Kriss & Feuerstein, LLP ("K&F"), and made the following findings:

(1) Four attorneys from K&F, including one partner and three associates, worked on this case. Partner Jerold F. Feuerstein, Esq. billed for 22.6 hours of his time; and associates Greg Friedman, Jason Liebowitz, and Joseph Vozza billed for 34.3, 25.6, and 3.25 hours of their time, respectively. All four attorneys billed their time to the Bank at a rate of $300 per hour. Thus, the initial fee application sought the following:

| Title | Name | Hourly Rate | Hours Spent | Total Charge |
|---|---|---|---|---|
| Partner | J. Feuerstein | $300 | 22.6 | $6,780 |
| Associate | G. Friedman | $300 | 34.3 | $10,290 |
| Associate | J. Liebowitz | $300 | 25.6 | $7,680 |
| Associate | J. Vozza | $300 | 3.25 | $975 |
| | | | Total | $25,725 |

(2) Judge Locke found that, although $300 per hour was a reasonable hourly rate for work performed by Mr. Feuerstein, namely, a Partner in the firm with 22 years of relevant legal experience, this rate was excessive for the associates. After reviewing the applicable caselaw, Judge Locke concluded that $250 per hour was appropriate for Messrs. Friedman, Liebowitz, and Vozza.

(3) Judge Locke further conducted an extensive review of the billing records submitted by K&F, and concluded that certain entries for work performed were redundant, unreasonable, or excessive, and determined that a 10% across-the-board reduction in the number of hours expended by each attorney was warranted, as follows:

| Title | Name | Original Hours | Reduced Hours |
|---|---|---|---|
| Partner | J. Feuerstein | 22.6 | 20.34 |
| Associate | G. Friedman | 34.3 | 30.87 |
| Associate | J. Liebowitz | 25.6 | 23.04 |
| Associate | J. Vozza | 3.25 | 2.93 |

(4) Then, by multiplying the attorneys' adjusted hourly rates by the reduced number of hours expended, Judge Locke appropriately included the following chart in the R&R:

| Title | Name | Hourly Rate | Hours Spent | Total Charge |
|---|---|---|---|---|
| Partner | J. Feuerstein | $300 | 20.34 | $6,102 |
| Associate | G. Friedman | $250 | 30.87 | $7,717.50 |
| Associate | J. Liebowitz | $250 | 23.04 | $5,760 |
| Associate | J. Vozza | $250 | 2.93 | $732.50 |
|  |  |  | **Adjusted Total** | **$20,312** |

Based on these calculations, Judge Locke recommended that this Court grant the Bank an award of reasonable attorneys' fees in the reduced amount of $20,312. In this regard, the reasoning in the R&R was abundantly clear and well-supported by the evidence in the record. Nevertheless, strangely, the Homeowners objected on the ground that:

> Plaintiff originally billed out both partner-level attorneys and associate attorneys at the same hourly rate – $300. However, the Magistrate Judge determined that while the partner-level attorney was entitled to that hourly rate, associate attorneys were not. <u>Yet, the R&R does not indicate that the time and billing discrepancy was addressed</u>.

Objections at 6 (emphasis supplied).

As indicated above, this objection is totally without merit. In the Court's view, it would have been almost impossible to read the R&R with any level of care and reach the conclusion, as the Homeowners apparently did, that Judge Locke failed to address any discrepancies in the materials supporting the fee award. There certainly is no basis for finding that Judge Locke clearly erred in computing these amounts.

11

Accordingly, to the extent the Homeowners object to the R&R on the ground that it improperly computed the award of attorneys' fees payable to the law firm of Kriss & Feuerstein LLP, their objection is overruled.

## II. Conclusion

Based on the foregoing, the Homeowners' objections to the May 9, 2016 Report and Recommendation by United States Magistrate Judge Steven I. Locke are overruled in their entirety.

Therefore, on Judge Locke's recommendation, the Court grants the Bank's motion for a default judgment against the Defaulting Defendants pursuant to Fed. R. Civ. P. 55, and holds that the interests of those parties in the Residence, if any, are hereby extinguished.

Further, the Court grants the Bank's motion for a judgment of foreclosure and sale, which will issue under separate cover in a form substantially similar to the proposed judgment submitted by the Bank. On Judge Locke's recommendation, the Court will appoint Lara Harmel, Esq. as the referee of the sale.

Finally, on Judge Locke's recommendation, the Court grants the Bank the following damages, which it is entitled to recover to the extent possible through a foreclosure and sale of the Residence:

(1) $224,128.81 representing the outstanding principal balance due on the underlying promissory note; plus

(2) $64,621.43 in unpaid interest accrued on the outstanding principal through May 9, 2016, namely, the date that the R&R issued; plus

(3) Continuing *per diem* interest on the outstanding principal balance at a rate of $58.27 per day from May 10, 2016 until judgment is entered; plus

(4) $4,157.59 for unpaid late charges incurred between June 16, 2008 and December 18, 2013; plus

(5) $30,276.70 for certain unpaid escrow advances provided for in the relevant mortgage documents; plus

(6) $4,821.73 in unpaid interest accrued on the unpaid escrow advances through May 9, 2016; plus

(7) Continuing *per diem* interest on the unpaid escrow advances at a rate of $7.87 per day from May 10, 2016 until judgment is entered; plus

(8) $35,402.05 for certain "deferred amounts" provided for in a June 21, 2011 Note Modification executed by the parties; plus

(9) $20,312 for reasonable attorneys' fees; plus

(10) $1,919.54 in costs; and

(11) post-judgment interest at the contractual rate of 9.49% to accrue from the date judgment is entered.

Except for the limited purpose of issuing a final Judgment of Foreclosure and Sale, this case is now closed.

**SO ORDERED**

Dated: Central Islip, New York
       June 1, 2016          /s/ Arthur D. Spatt
                             ARTHUR D. SPATT
                             United States District Judge